## GILCHRIST v. GILMER.

1. The general rule in equity, that the proof must correspond with the allegations, applies only when the evidence discloses a cause for relief different from that set up by the pleadings.

2. A deed of trust providing that the trustee shall first pay all debts described in the deed for which the complainant was liable, or liable in any other manner, and afterwards providing for creditors generally, does not authorize the trustee to pay the complainant as a preferred creditor, any other debts than those paid by him as surety.

3. If previous to executing the deed, the grantor agreed that a suit against the complainant as a surety would be defended by him, at his own expense the counsel fees afterwards paid by the surety, in defending the suit, are liabilities under the deed, but if expended in resisting the suit, the payment is not made as surety, and therefore is not within the deed.

124

Writ of Error to the Court of Chancery for the twelfth District.

The bill is filed by Gilmer, as a *cestui que trust* under a deed executed by one Ryan, as the surviving partner of Porter & Ryan, against Gilchrist, the surviving trustee, and Ryan is also made a party. The object of the bill is to compel the trustee to apply the proceeds of the effects of the trust to the payment of the *cestui que trust*, and the parts of the deed out of which the principal question arises are as follows, to wit: The deed first recites, that the firm of P. & R. was indebted to Nelson, Carleton & Co. in the sum of some thousands of dollars, due by several notes, and then describes several other notes and bills upon which other persons were liable for them —amongst others are the names of Johnson and Gilmer, M. L. Gilmer, (the complainant,) and B. F. Dozier. After conveying the trust property, the deed declares the trusts in these terms, to wit: The first money which shall hereafter come to their (the trustees) hands, shall be applied to the payment of the debts for which Johnson, Gilmer and Dozier are liable, and next the debt due to Nelson, Carleton & Co. as herein before expressed; the said trustees first securing all costs, expenses, &c. and then upon this further trust, to pay and discharge all debts for which said Johnson & Gilmer are liable, as herein before described, and the said B. F. Dozier, or either of them, in any other matter whatsoever, and to apply the money from demands heretofore given, and the said trustees as expressed by assignment herebefore made; and upon this further trust, to pay and discharge the debts for which F. & J., (certain other sureties,) are liable." It then declares trusts in favor of other persons, also as sureties; and after the named debts are paid, generally to pay the debts of P. & R.

The complainant claimed to be paid out of the trust fund the amount of a draft accepted by him, for the accommodation of Porter & Ryan, for $1500, several notes due to Johnson and Gilmer, from Porter & Ryan, others due to B. F. Johnson, one of that firm, and one due to one Hinkle, but all assigned to the complainant previous to the execution of the

deed of trust. Also, a sum of $50 paid certain attorneys, as a fee for counsel in defending one of the liabilities embraced in the deed and the costs of a suit commenced by Porter, or Porter & Ryan, in the name of Johnson & Gilmer upon one of the notes described in the deed of trust.

The answer of Gilchrist sets out an account of the trust effects, showing sufficient assets to pay the demands, but insisting—1. That he was only authorized to pay debts for which the complainant was liable as surety for Porter & Ryan. 2. That the debt due by the acceptance, even if specifically provided against, originated in the private debt of Porter, and therefore that Ryan could not appropriate the assets of the firm for that purpose. 3. That certain notes, &c., for which the complainant is responsible, as one of the firm of Johnson & Gilmer, were assigned by the deed of trust, and are insisted on as sets off.

Evidence was taken which it is unnecessary to recite further than to say, the item paid for costs seems not to have been proved, and the acceptance paid by Gilmer was for $1530, and not for $1500, as described in the deed of trust.

The Chancellor, at the hearing, considered the deed as covering all the demands held by the complainant, whether paid as surety or otherwise, and decreed that all the items should be allowed except that for costs; that the note to Hinkle should be credited with $100 more than was shown by the note itself; that an account should be taken of the demands of the claimant, and also of the sets off asserted by the defendant, and the balance reported. This was done, and a decree rendered finally for $3,006 24.

This decree is now assigned as error, as well as the one directing the manner of stating the account.

GILCHRIST, *pro se*, insisted—

1. The deed of trust does not authorize any such bill to be paid as that established by the proof. The allegations of the bill correspond with the deed, but neither with the proof. The consequence is, the case stated is not made out, and the decree is improper. [1 Ala. Rep. N. S. 330; 3 Ib. 421.]

2. It is evident from the reading of the deed, that its object was to provide for sureties in the first instance, and the

specified debts.    After these the general creditors are provid-
ed for.    [2 Ala. Rep. 925.]

3. But if all the demands due the complainant were cov-
ered by the deed, the counsel fee certainly was a debt due,
or a liability.

N. Cook, contra, insisted—

1. That the pretence set up by the answer, that Ryan was
not authorized to  convey the assets to  secure  his  partner's
debt, could not be urged by the trustee, as he claimed under
the deed, and that directed it to be paid.

2. There is no dispute of the identity of the debt, and the
addition of thirty dollars does not change the case made by
the bill.    The case made is, that the complainant paid mo-
ney as surety, and it is immaterial, that in the allegation a
mistake is made of the instrument on which it was paid.

3. The payment of counsel fees for defending the debt to
which Gilmer's partner had improperly put his name, is  a li-
ability on account of Porter & Ryan, who produced it, and
within the terms of the deed, even when restricted to mere
liabilities.

3. As to the construction of the deed, the rule is that it
shall be taken most strongly against the grantor, and all doubt-
ful terms taken in favor of the grantee.    [Story on Con. 172,
§ 258; Powell on Con. 382; Watson v. Boylston, 5 Mass.
411.]

GOLDTHWAITE, J.—1. Although it is evident enough
the party has mistaken the sum for which the bill of exchange
was drawn, the amount of which he now seeks, with other
sums, to recover, yet it is a mistake to confound a misdescrip-
tion like this, with the serious defect of omitting to prove the
*case* stated by the bill.    The general rule is familiar, that
the proof must correspond with the allegation.    [Gibson v.
Carson, 3 Ala. Rep. 421; Clements *v.* Kellogg, 1 Ib. N. S.
330.]    But we apprehend it applies only when the evidence
discloses a cause for relief different from that set up by the
party pleading it.    It is said by a very respectable commen-
tator on equity evidence, that courts of equity have usually
shown great indulgence in cases of inaccuracy, whether caus-

Gilchrist v. Gilmer.

ed by mistake, or deficiency of information. [Gresley Eq. Ev. 170.] Here it is unimportant whether the bill paid was $1500 or $1530, as the right to relief does not arise from any description of the bill, but grows out of the fact that it is the bill intended to be described in the deed of trust. Inaccuracy of description in the deed itself, is no cause to prevent the party from relief, even when the question is raised at law. [Graham v. Lockhart, Jan'y term, 1846.]

2. On the construction of the deed itself, we are very clear it was intended by the grantor, to provide in the first instance only for his sureties and designated creditors. This is evident from the fact that sureties and *some* preferred creditors are first named, and afterwards the creditors generally are let in. As the complainant, in his character of a creditor is not named, we are unable to say that a provision for any *liability* he may be under for the assigning partner, is sufficient to cover all matters that person or his firm were liable to him. As a surety he is indemnified, but as a creditor he seems to have no preference over the general class.

3. We do not very well understand, from the statements of the bill, or the proofs, what are the facts with relation to the item for counsel fees. If previous to the assignment, there was an agreement that the suit should be defended, and the costs should be paid by Ryan, then it would seem as if this was a liability of the firm, and it might be let in under the terms of the deed; but if, as we infer, the money was expended in resisting the demand, it is clear the payment was not made as surety, and therefore is not within the deed.

The decree must be reversed, and in the court below the Master will be directed to state an account of what is due to the complainant for monies paid as surety, with interest from the payment, from which will be deducted the sums due the defendant, as trustee for the assigned demands, after deducting from the latter the debts due the complainant as a general creditor.

Reversed and remanded.